UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LESAMUEL PALMER,

    Plaintiff,

vs.                                Case No. 2:09-cv-604-FtM-29DNF

A. JOHNSON; A. WALKER; M. KRAUS; S.
CONIGILIO,

    Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court upon review of the Motion for Summary Judgment (Doc. #63, Mot. SJ) filed on behalf of Defendants Kraus and Walker, and supporting exhibits (Doc. #63-1, Exhs. A-D) consisting of copies of Plaintiff's inmate grievances, affidavit of Defendant Kraus, and case law. Defendants also submit two closed circuit video recordings, *in camera*, including a wing video that recorded the incident at issue, but fails to convey spoken words, and a hand held video that recorded the post-use-of-force medical treatment. See Doc. #74, #75 (hereinafter "Def. Videos"). Plaintiff filed a response (Doc. 71, Response) in opposition to the Defendants' Motion and attached supporting exhibits (Doc. #71-1, Pl's Exhs.), including inmate grievances and responses thereto. Plaintiff also files his affidavit (Doc. #72) and an affidavit from an inmate witness (Doc. #73). This matter is ripe for review.

I.

The Complaint alleges that Plaintiff was subjected to cruel and unusual punishment in violation of his Eighth Amendment rights stemming from a June 8, 2009 assault, by correctional officers while Plaintiff was incarcerated at Charlotte Correctional Institution ("CCI"). Complaint at 8. Plaintiff names the following Defendants: the Warden of CCI, A. Johnson; CCI Lieutenant A. Walker; and Correctional Officers M. Kraus and S. Conigilio. Id. at 6-7. Plaintiff claims that Defendants Kraus and Conigilio assaulted him by slamming him to the floor while he was in restraints. Id. After he was on the ground, Plaintiff alleges that he received "blows by Defendant Kraus . . . and was called a 'baby raper'." Id. at 9. During the incident, Plaintiff states that Defendant Conigilio held down his legs down. Id. Plaintiff alleges that Defendant Walker was also present during the incident. Id. Plaintiff claims that he had previously asked Lieutenant Walker to escort him because he feared Kraus and Conigilio, but his requests were ignored. Id. at 9-10. In February 2009, a few months before the incident *sub judice*, Plaintiff claims that Defendants Kraus and Conigilio previously assaulted him. See also 2:09-cv-401-FtM-36DNF (stemming from February 2009 assault).

II.

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no

-2-

genuine issue of fact and compels judgment as a matter of law." Swisher Int'l, Inc. v. Schafer, 550 F.3d 1046, 1050 (11th Cir. 2008); Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The standard for creating a genuine dispute of fact requires courts to "make all *reasonable* inferences in favor of the party opposing summary judgment, Chapman v. Al Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor. "A factual dispute alone is not sufficient to defeat a properly pled motion for summary judgment." Teblum v. Eckerd Corp. of Fla., Inc., 2:03-cv-495-FTM-33DNF, 2006 WL 288932 *1 (M.D. Fla. Feb. 7, 2006). Instead, "[o]nly factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." Lofton v. Sec'y Dep't of the Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004)(citing Anderson, 477 U.S. at 247-48). The moving party bears the burden of demonstrating to the

Court that based upon the record no genuine issues of material fact exist that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d at 1260(citing Celotex, 477 U.S. at 323). Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" Pittman v. Tucker, 213 Fed. Appx. 867, 870 (11th Cir. 2007)(quoting Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir. 2002)).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences", Anderson, 477 U.S. at 255, must be drawn in favor of the non-moving party, but those inferences are drawn "only to the extent supportable by the record," Penley v. Eslinger, 605 F.3d 843, 848 (11th Cir. 2010)(citation omitted). The court, however, "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, [the court's]

inferences must accord deference to the views of prison authorities." Beard, 548 U.S. at 530. "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. Sch. Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

### III. Findings of Fact and Conclusions of Law

#### A. Section 1983 Elements

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261

F.3d 1275, 1288 (11th Cir. 2001). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, 268 F.3d 1014, 1059 (11th Cir. 2001); Swint v. City of Wadley, 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994). A defendant who occupies a supervisory position may not be held liable under a theory of *respondeat superior* in a § 1983 action. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-692 (1978); Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003).

**B. Eighth Amendment**

The Eighth Amendment, which applies to the states through the Fourteenth Amendment, can give rise claims challenging the excessive use of force. Thomas v. Bryant, 614 F.3d 1288, 1305 (11th Cir. 2010)(reviewing categories of claims under the Eighth Amendment). An excessive-force claim requires a two-prong showing: (1) an objective showing of deprivation or injury that is "sufficiently serious" to constitute a denial of the "minimal civilized measure of life's necessities"; and, (2) a subjective showing that the official had a "sufficiently culpable state of mind." Id. at 1304 (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994))(other citations omitted). It is the "unnecessary and wanton infliction of pain" caused by force used "maliciously and

sadistically" for the very purpose of causing harm that constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 322 (1986). Thus, where an Eighth Amendment claim is based upon allegations of excessive force, the question turns on whether the prison guard's "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005). To determine whether force was applied "maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted).

Moreover, in the context of prison discipline, a distinction is made between "punishment after the fact and immediate coercive measures necessary to restore order or security." Ort v. White, 813 F.2d 318, 324-325 (11th Cir. 1987). When a prison's internal safety is of concern, courts conduct a more deferential review of the prison officials' actions. Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991)(citations omitted). Indeed, "[t]hat

-7-

deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." Whitley, 475 U.S. at 322; See also Bell v. Wolfish, 441 U.S. 520, 547 (1979).

### C. Defendant Kraus

#### (1) Disputed Material Facts:

It is undisputed that Plaintiff had "cuffed up" before leaving the recreation cell. Defs' Videos; Response at 8; Aff. Plaintiff at 2; Aff. Clayton at 1-2. It is also undisputed that Defendant Kraus forced Plaintiff to the ground. Complaint at 8 (stating plaintiff was "slammed" to ground by Kraus); Mot. SJ at 3 (stating Kraus placed his right hand on plaintiff's right arm and his left hand on plaintiff's shoulders and immediately forced plaintiff to the ground chest first). Defendant Kraus laid on top of Plaintiff's back while he was on the ground. See Complaint at 9; Defs' Videos. Immediately after the incident, Plaintiff was taken to the medical department for a post-use-of-force medical examination. Id. Plaintiff was provided bandages for the injuries he sustained to his elbows as a result of the use of force and he complained of back pain. Mot. SJ at 4; Defs' Videos.

Those facts in dispute involve the events leading up the use-of-force, the events immediately proceeding the incident, and what

occurred during the incident. Defendants Kraus and Walker submit that on the morning of June 9, 2009, Plaintiff was creating a disturbance outside in the recreation area. Mot. SJ at 3 (citing Aff. Kraus). Plaintiff disputes Defendants' contentions and submits evidence that he was having a conversation with an inmate in the cell next him and was not creating a disturbance. Aff. Plaintiff at 2; Aff. Clayton at 1. Plaintiff states that Defendant Kraus always "picked on him."

Defendant Kraus submits that during the escort, Plaintiff began to pull away from his custodial hold, so he directed Plaintiff to cease his actions. Mot. SJ at 3. Kraus submits that Plaintiff did not comply the first time with his orders to cease, but the second time complied. Id. (citing Exh's B, C, D). Warden Johnson's review of the video reflects that he did not see Plaintiff "pull away" from Kraus. Defs' Exh. B at 14; Response at 12; Pl's Exh. B at 1. Upon review of the video, the Court agrees with Warden Johnson that the video does not show Plaintiff "pulling away" from Kraus. To the contrary, the video shows Kraus pushing, or leading, Plaintiff toward the wall. See Defs' Video. Thus, with respect to this fact, the Court accepts the video's depiction of the event, rather than Defendant's account. Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010).

Defendant Kraus claims that Plaintiff "suddenly stopped, turned around, and faced Officer Kraus in an aggressive manner."

Mot. SJ at 3. Kraus alleges that at this point Plaintiff yelled obscenities at him. Id. Knowing Plaintiff's "history of violence," Kraus submits that he felt threatened by Plaintiff's actions. Id. Disputing this, Plaintiff states he turned in the general direction of Kraus to respond to another inmate who was located in the recreational cell. Aff. Plaintiff at 2. In support of his contentions, Plaintiff submits an affidavit from the inmate witness. Aff. Clayton at 2 (stating inmate Clayton told Plaintiff "Just maintain." To which Plaintiff turned and responded to him, "Fro-sure lil bra, these pigs cant get to me."). The video confirms that Plaintiff turned in the direction of Kraus. Because the video has no sound, the video does not contradict Plaintiff's version of the events. Plaintiff further states that Kraus could not have felt threatened by him because he was already in restraints, including a waist belt, which was connected to a pair of handcuffs preventing movement of his hands or arms. Response at 11. The video confirms that Plaintiff was in such restraints. See Defs' Video.

Thus, the record contains a genuine dispute of fact as to whether Plaintiff yelled obscenities at Kraus, or whether he was talking to the inmate witness. This is material to the determination of whether the force was used to restore order, or whether it was unnecessary and excessive and applied maliciously and sadistically.

Once Plaintiff was on the ground, Kraus submits that he used only minimal force necessary to gain control of Plaintiff. Mot. SJ at 4 (citing Exhs. B, C, D). Again, Plaintiff disputes Kraus' contentions, stating that Kraus gave him a "couple of blows" while calling him a "baby raper." Aff. Plaintiff at 2. The inmate witness confirms that Kraus called Plaintiff a "baby raper." Aff. Clayton at 2. Defendant Kraus submits in his affidavit that he did not call Plaintiff a "baby raper." Aff. Kraus. The video fails to provide an unobstructed view. Even assuming *arguendo* that Kraus' initial use of force was used to restore order and gain compliance of Plaintiff, Plaintiff's claim that Kraus gave him "extra blows" while calling Plaintiff a "baby raper," after Plaintiff was restrained on the ground, compels the denial of the Motion. Based on the aforementioned genuine disputes of material fact, the Court denies Defendant Kraus' Motion for Summary Judgment.

**(2) Qualified Immunity:**

Defendant Kraus also moves for summary judgment based on qualified immunity. Mot. SJ at 16. "[I]f the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial." Johnson v. Breeden, 280 F.3d 1308, 1317 (11th Cir. 2002). To receive qualified immunity, the officer must first show that he acted

within his discretionary authority. Id. at 1291-92. The burden then shifts to Plaintiff to show that qualified immunity should not apply. Id. Even if Plaintiff can show that the defendant's actions amounted to a constitutional violation, "if the violated right as not clearly established, qualified immunity still applies." Id. A right may be clearly established for qualified immunity purposes if: case law with indistinguishable facts clearly establishing the constitutional right; a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, or conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. Id. "For claims of excessive force in violation of the Eighth or Fourteenth Amendments, however, a plaintiff can overcome a defense of qualified immunity by showing only the first prong, that his Eight or Fourteenth Amendment rights have been violated." Fennell v. Gilstrap, 559 F.3d 1212, 1216-17 (11th Cir. 2009).

Here, under Plaintiff's version of the facts, Defendant Kraus did not apply force in a good faith effort to restore or maintain discipline, but maliciously and sadistically for the very purpose of causing harm. Specifically, Plaintiff submits that he complied with Kraus' orders, was speaking to another inmate, did not yell obscenities at Kraus, and did not pose a threat to Kraus because he was being escorted in restraints. Plaintiff also claims and

submits supporting evidence: that Defendant Kraus always "picked on him," there was a prior incident months before when Kraus used excessive use of force on him; and, Kraus called him a "baby raper," while giving him "extra blows" while he laid on top of Plaintiff on the ground. Because Plaintiff's version of the facts satisfies both the subjective and objective components for an Eighth Amendment violation, Defendant Kraus will be denied qualified immunity at this stage of the proceedings.

### D. Defendant Walker

Defendant Walker states that the Complaint "fails to state a claim" as to him. Mot. SJ at 5-6. Walker first states that the Complaint only alleges that Plaintiff told Walker that "he was 'in a high risk to be assaulted by Defendant Kraus.'" Id. at 6. Defendant submits that "it is a long leap from knowing of problems between an inmate and an officer and knowing with reasonable certainty that the officer poses an excessive risk of harm to an inmate." Id. at 8. Defendant Walker also submits that his "mere supervision over other correctional officers is an insufficient reason to hold Walker liable. . . . ." Id.

At the outset, although Defendant Walker recites the motion to dismiss standard of review, the Court applies the summary judgment standard because Walker attaches exhibits, including his affidavit, to the Motion. The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is

extremely rigorous. <u>Hicks v. Moore</u>, 422 F.3d 1246 (11th Cir. 2005). Supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988)(per curiam). The causal connection can be established by showing: (1) that the supervisor knew about and failed to correct a widespread history of abuse; (2) had a custom or policy resulted in the constitutional violation; or, (3) that the facts support an inference that the supervisor directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so. <u>Harper v. Lawrence County, Ala.</u>, 592 F.3d 1227, 1235-36 (11th Cir. 2010); <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003).

Here, Plaintiff states that he complained to Defendant Lieutenant Walker on numerous occasions about Kraus and that Walker was aware of Kraus' February 2009 excessive use of force on Plaintiff. Complaint at 9; Response at 4-5; <u>see also</u> Doc. #71-1 at 1-14 (complaining of incidents at the jail on inmate grievances, several regarding Kraus and Congilio, starting in February 2009). Plaintiff states that Defendant Walker ignored his complaints. When Plaintiff asked Walker why he ignored him, Plaintiff states that Walker told him it was because Plaintiff is a "dumb []."

-14-

Complaint at 9; Response at 4-5. Defendant Walker does not dispute Plaintiff's contentions in his affidavit. Aff. Walker.

Further, it is undisputed that Defendant Walker was present when Defendant Kraus allegedly used excessive use of force on Plaintiff. Complaint at 9; Defs' Videos; Doc. #63-1. Plaintiff states that immediately before the escort began, he specifically asked Walker if a guard, other than Kraus, could escort him because the two had issues with each other. Response at 5. An inmate affiant submits that he and other inmate witnesses told Defendant Walker that Kraus was "lying on Palmer" when Defendant Kraus told Defendant Walker that Palmer refused to cuff-up before Walker arrived at the recreation cell. Doc. #73.

The record does not establish that Defendant Walker took any action months prior to this incident, specifically after the February 2009 incident. Nor does the record include the outcome of the inspector general's investigation of the February 2009 incident between Kraus and Plaintiff. Further, the record shows that Defendant Walker took no actions to diffuse the situation immediately before it occurred. Instead, Defendant Walker ordered Plaintiff to comply and be escorted by Defendant Kraus. The video reveals that Defendant Walker did not take any actions while the alleged excessive use of force incident was taking place. Instead, while Defendant Kraus applied force to Plaintiff, the video shows that Walker stood and watched. See Defs' Video. As a supervisory

official, the record contains a causal connection between Defendant Walker and the alleged Eighth Amendment violation because he was present at the scene and did not intervene, or because he knew of the prior incidents between Kraus and Plaintiff and did not take measures to stop Kraus' alleged excessive use of force in June 2009. Therefore, the Court finds the record contains a genuine dispute of material fact as to Defendant Walker and his Motion is denied.

### E. Official Capacity Claims

Defendants submit that the Complaint is unclear as to whether Plaintiff is pursuing claims against them in their official capacities. Mot. SJ at 14. Nonetheless, Defendants state that to the extent Plaintiff pursues official capacity claims, Eleventh Amendment immunity precludes the award of monetary damages. Id.

In Response, Plaintiff clarifies that he is not seeking monetary damages from Defendants in their official capacities. Response at 13. Plaintiff states that he names the Defendants in their official capacity for purposes of obtaining injunctive and/or declaratory relief. Id. Indeed, any official capacity claim for monetary damages against Defendants is precluded by Eleventh Amendment immunity. Kentucky v. Graham, 473 U.S. 159 (1985). The Court notes that this action is pending against the Defendants in both their individual and official capacities. See Doc. #32 at 3, 5 (dismissing Defendant McNeil, but noting that the action is

construed against the defendants in their official and individual capacities). "In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. The course of proceedings in such cases typically will indicate the nature of the liability sought to be imposed." Graham, 473 U.S. at 167 n.14 (citing Brandon v. Holt, 469 U.S. 464, 469 (1985)). See also Hobbs v. Roberts, 999 F.2d 1526, 1528-1532 (11th Cir. 1993).

To the extent Plaintiff sues Defendants in their official capacities, then this action is effectively an action against the governmental entity Defendants represents, which in this case is the Florida Department of Corrections. Graham, 473 U.S. at 166; Cook v. Sheriff of Monroe County, 402 F.3d 1092, 1115 (11th Cir. 2005). A governmental entity is only liable when the entity itself was the "moving force" behind the alleged constitutional deprivation. Graham, 473 U.S. at 166 (citations omitted). Thus, in an official capacity action, the entity's "policy or custom" must have played a part in the violation of federal law. Id. (other citations omitted). Other than moving for dismissal of monetary damages against Defendants in their official capacities, Defendants do not move for summary judgment on Plaintiff's official capacity claims. Therefore, Plaintiff's claims against the Defendants in their official capacities will proceed to the extent Plaintiff seeks injunctive or declaratory relief.

**F.  42 U.S.C. § 1997e(e)**

Defendants submit that 42 U.S.C. § 1997e(e) precludes Plaintiff from recovering compensatory or punitive damages because he cannot demonstrate physical injury. Mot. SJ at 15. In Response, Plaintiff states that the record shows that he sustained injuries from Kraus' excessive use of force. Therefore, Plaintiff states that he is entitled to compensatory and punitive damages. Response at 15-16. Plaintiff further points out that it is inappropriate for the Court to determine the availability of punitive damages at the summary judgment stage of the proceedings because punitive damages are available upon a showing of evil motive, intent, recklessness, or callous indifference. Id. at 15.

Section 1997e(e) limits recovery for prisoner plaintiffs seeking monetary damages for mental or emotional injuries suffered while in custody, absent a prior showing of physical injury. 42 U.S.C. § 1997e(e). As discussed above, according to Plaintiff's version of the facts supported by the record, Defendant Kraus applied excessive use of force for malicious and sadistic purposes. Plaintiff sustained physical injuries to his elbows and complained of back pain as a result of the incident. Therefore, Plaintiff has alleged physical injuries and is not precluded from seeking compensatory damages, for actual injuries sustained, or punitive damages, if evil motive is later proven, by § 1997e(e). Plaintiff may also seek nominal damages for the violation of a fundamental

right, declaratory and injunctive relief.  Chatham v. Adcock, 334 Fed. Appx. 281, 284 (11th Cir. 2009).

ACCORDINGLY, it is hereby

**ORDERED**:

The Motion for Summary Judgment filed on behalf of Defendants Walker and Kraus (Doc. #63) is **GRANTED to the limited extent** that Plaintiff may not seek monetary damages against Defendants in their official capacities, in all other respects the Motion is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, on this __28th__ day of January, 2011.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　JOHN E. STEELE
　　　　　　　　　　　　　　　　　　　United States District Judge

SA: alj
Copies: All Parties of Record